# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, } | |
| Plaintiff, } | |
| v. } | Case No.: 2:10-cr-00154-RDP-HGD |
| DANIEL FRANCISCO RAMOS, } | |
| Defendant. } | |

## MEMORANDUM OPINION

This case is before the court on Defendant Daniel Francisco Ramos's Motion to Suppress Evidence (Doc. # 7), filed June 4, 2010. After an evidentiary hearing and due consideration of briefs, arguments, and applicable law, the court concludes the motion to suppress is due to be denied.

**I.    Findings of Fact**

This case involves a traffic stop by Officer Alejandro Gonzalez ("Gonzalez") of a vehicle driven by Defendant. Officer Gonzalez has twenty years of law enforcement experience in a variety of locations: Los Angeles, California; Georgia; and Hoover, Alabama. (Doc. # 11 at 3). Officer Gonzalez is trained and teaches courses in the area of criminal interdiction. (*Id*. at 3-4) He described this discipline as being trained to look "beyond the traffic stop." (*Id*. at 3). He is an instructor for the El Paso Intelligence Center, which is a part of the Department of Justice, the National Highway Traffic Safety Administration, as well as the Alabama Governor's Traffic Safety Task Force. (*Id*. at 3-4). He possesses several other instructor certifications and has trained thousands of officers throughout the country, local, state and federal. (*Id*. at 4). Recently, he has been tapped to teach interdiction techniques to southwest sector border patrol officials in Arizona and California. (*Id*. at 4). While working in law enforcement for the City of Hoover, Officer Gonzalez is assigned to the

Hoover/Jefferson County Highway Safety Task Force, works along the local interstates, and his duties include public safety, changing tires, helping out on wrecks, writing tickets, and apprehending criminals. (*Id*. at 3-4).

On November 23, 2009, Officer Gonzalez was monitoring eastbound traffic from the center grass median on Interstate 20 near Leeds, Alabama. (*Id*. at 5-6). At approximately 2:00 p.m., Officer Gonzalez observed a silver Nissan Xterra following too closely to a white sedan in violation of Alabama law, more specifically criminal statute section 32-5A-89. (*Id*. at 6-7). When Officer Gonzalez was able to catch up to the Nissan, he noticed that it was no longer following another car too closely; therefore, he initially decided that he would not stop the subject car. (*Id*. at 7-8). Immediately thereafter, however, he once again noticed the Nissan following a car too closely, and consequently he initiated a traffic stop due to these traffic violations. (*Id*. at 7-8).

Defendant was the sole occupant of the vehicle. (*Id*. at 8). Officer Gonzalez approached the passenger side of the vehicle, advised Defendant of the traffic violation, and asked him for his driver's license, registration, and proof of insurance. (*Id*. at 8-9). Officer Gonzalez noticed that Defendant's hands were visibly shaking when handling the paperwork and he was not making eye contact. (*Id*. at 8-9). Defendant's left foot was also tapping on the floor board. (*Id*. at 9). Even when Officer Gonzalez explained that he only intended to give Defendant a warning, his nervousness did not decrease. (*Id*. at 9). Once he obtained the documents requested from Defendant, Officer Gonzalez noticed that Defendant had a Nevada drivers license, but the vehicle registration was from Tucson, Arizona, and the vehicle and just been registered on November 11, 2009. (*Id*. at 10, 12). Defendant also had two cell phones in the center console holder and a road map book on the front passenger seat. (*Id*. at 10-11).

Defendant told Officer Gonzalez that he was on the way to Atlanta to attend his sister's wedding and to look for work. (*Id*. at 11). Although Defendant said he was a construction worker, Officer Gonzalez noticed that his hands appeared too soft for someone who did that type of work. (*Id*. at 11). Gonzalez told Defendant that he needed to run Defendant's information through his computer, and Gonzalez walked back to his patrol car. (*Id*. at 11-12). That first encounter lasted approximately four minutes. (*Id*. at 11).

Upon checking Defendant's drivers license status, Officer Gonzalez discovered that Defendant had registered another vehicle in Nevada on October 27, 2009, about two weeks before the registration of the vehicle he was driving, and that he had used a different insurance company to insure that vehicle. (*Id*. at 12). Officer Gonzalez also observed that Defendant could not stay still while seated in his vehicle, and was repeatedly stretching his arms and moving his head from side to side. (*Id*. at 12).

Approximately six minutes later, Officer Gonzalez exited his vehicle and met Defendant between the two vehicles. (*Id*. at 13). Officer Gonzalez again told Defendant that he would only be given a written warning and that nothing would go on his record. (*Id*. at 13). As he was filling out the warning ticket, Officer Gonzalez continued to ask Defendant simple questions, and noticed that Defendant continued to act in a nervous manner, breaking eye contact, and moving around. (*Id*. at 14-15). When asked about his address in Tucson, Defendant pointed to the paperwork and said "Evelina," but he could not give his street number. (*Id*. at 15-16). When asked where he was going in Atlanta, Defendant stated that he did not know, but that he was supposed to call his sister when he arrived. (*Id*. at 14). However, later in their conversation, Officer Gonzalez understood Defendant to indicate that his sister was still in Mexico. (*Id*. at 14).

3

At approximately 2:14 p.m., Defendant signed the warning ticket. (*Id*. at 17). Based on his observations of Defendant's behavior and the other factors, Officer Gonzalez asked Defendant if he could ask him a few more questions. (*Id*. at 17). Defendant said yes. (*Id*. at 17). Officer Gonzalez asked Defendant if he had any illegal drugs or contraband in his vehicle. (*Id*. at 17). Defendant responded negatively. (*Id*. at 17). The second time Officer Gonzalez asked Defendant if had any drugs, Defendant again responded in the negative, but he paused a bit. (*Id*. at 17).

Officer Gonzalez then asked Defendant if he could search his vehicle. (*Id*. at 17). Defendant consented and indicated that the vehicle was open and the keys were in the car. (*Id*. at 17). Defendant gave his consent to search his vehicle at approximately 2:15 p.m., within fifteen minutes of the traffic stop. (*Id*. at 17).

After obtaining Defendant's consent to search his vehicle, when he first opened the car door, Officer Gonzalez noticed a third cell phone in the front portion of the dash and a receipt for a wrecker service in Colima, Mexico, dated November 13, 2009, two days after the vehicle was registered. (*Id*. at 17-18). During his search, Officer Gonzalez looked under the front of the vehicle and observed that there had been tampering, that is fresh scratches, tooling, and silicone, on the transfer case of the vehicle. (*Id*. at 19). Officer Gonzalez believed the tampering to have been very recent, and Defendant said that he had been in possession of the vehicle for approximately three weeks. (*Id*. at 19-20).

After observing that the vehicle's gears were not working as they should, Officer Gonzalez obtained Defendant's permission to search the transfer case. (*Id*. at 20-22). Thereafter, fourteen pounds of methamphetamine was found in the car. (*Id*. at 22-23).

## II.   Discussion and Analysis

The Fourth Amendment guards "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const., amend. IV*. The rule prohibiting the use of evidence in criminal prosecutions that is obtained in violation of a person's Fourth Amendment rights is "a judicially created remedy designed to safeguard [those] rights." *United States v. Calandra*, 414 U.S. 338, 348 (1974). The rule is designed to deter misconduct by law enforcement. *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir.2007) (citing *Nix v. Williams*, 467 U.S. 431, 442-43 (1984)).

Defendant argues that the information obtained during the search of his vehicle should be excluded because (1) the initial traffic stop was based on pretext and therefore unconstitutional (*i.e.*, Officer Gonzalez lacked probable cause to make the traffic stop), and (2) the traffic stop was unreasonably long. (Doc. # 7). The United States contends that the traffic stop was lawful, and thus the evidence seized is admissible, because (1) Officer Gonzalez had probable cause to stop Defendant after witnessing Defendant violate Alabama law on at least two occasions, (2) the stop only lasted approximately fifteen minutes before Defendant signed the warning ticket and gave his consent to search the vehicle, and (3) there was valid consent to conduct the search. (Doc. # 8).

### A.   Officer Gonzalez Had Probable Cause to Stop Defendant

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Therefore, an automobile stop is "subject to the constitutional imperative that it not be unreasonable under the circumstances." *Whren*, 517 U.S. at 810 (internal marks omitted)). "[A] traffic stop is a

5

constitutional detention if it is justified by reasonable suspicion under *Terry* or probable cause to believe a traffic violation has occurred under *Whren* ... ." *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003).

In *Whren*, the Supreme Court held that the constitutional reasonableness of the traffic stop does not depend on the actual motivation of the police officers involved. That is, ulterior motives are irrelevant if the officer witnessed Defendant commit a traffic violation. *Whren*, 517 U.S. at 813; *see also United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) ("[t]he [*Whren*] decision conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred"); *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) ("an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment," where the officers had observed Defendant commit traffic offenses). Because Officer Gonzalez witnessed Defendant following too closely in violation of Alabama law on two separate occasions, any other motivation he may have had does not affect the constitutional reasonableness of the stop. Therefore, Defendant's argument about pretext is without merit.[1]

**B.     The Length of the Stop Was Not Unreasonable**

Even though an officer may have justification to initiate a traffic stop, the ensuing detention of a vehicle's occupant must not be excessively intrusive in that the officer's actions "must be reasonably related in scope to the circumstances which justified the interference in the first place."

---

[1] In any event, Defendant put on no evidence that Officer Gonzalez had any motivation to stop him other than because of the traffic violations. Further, Officer Gonzalez testified that he initially decided not to stop Defendant, but revisited that decision and changed his mind after observing Defendant follow a vehicle too closely a second time. The court credits his testimony.

*United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)); *see also United States v. Cantu*, 227 Fed.Appx. 783, 785 (11th Cir. 2007). The stop must not last "'any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity.'" *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (quoting *Holloman*, 113 F.3d at 196). The duration of the stop "must be limited to the time necessary to effectuate the purpose of the stop." *Purcell*, 236 F.3d at 1277. An initially lawful stop may become unlawful if an officer improperly extends its duration. *United States v. Hernandez*, 418 F.3d 1206, 1209 n. 3 (11th Cir. 2005). The proper focus of the inquiry is on the duration of the stop, not the scope of questioning. *Muehler v. Mena*, 544 U.S. 93, 100-01 (2005).

Once an officer makes a legal traffic stop, he is not required to turn a blind eye toward questionable activities. Indeed, a law enforcement officer has a "'duty to investigate suspicious circumstances that then [come] to his attention.'" *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991) (quoting *United States v. Hardy*, 855 F.2d 753, 757 (11th Cir. 1988)). Police are "entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants." *Simmons*, 172 F.3d at 778 (emphasis omitted). Moreover, during a valid traffic stop, an officer is also permitted to order the suspect to exit the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 & n. 6 (1977).

Officer Gonzalez had a valid basis for initially stopping Defendant. Thereafter, he had a "duty to investigate [the] suspicious circumstances that [] came to his attention" during the stop. *Harris*, 928 F.2d at 1117. Officer Gonzalez was entitled to question Defendant about the

information about the registration of the vehicle, the other vehicle that came to his attention, why he was so far from home and why, and he was authorized to have Defendant step out of the vehicle. The information he learned, combined with Defendant's nervousness, provided ample reason for Officer Gonzalez to extend the traffic stop to conduct a further investigation. Moreover, the detention had only lasted fifteen minutes before Defendant's voluntary consent to search the vehicle was obtained. This is a reasonable amount of time under the circumstances.

### C.     Defendant Gave Voluntary Consent to Search His Vehicle

The search of the vehicle was lawful pursuant to Defendant's voluntary consent. "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Defendant does not argue that his consent was not voluntary, other than to argue that the stop should not have occurred and was unreasonable in duration, issues which have been resolved against him for the reasons set forth above. The information discovered after consent supplied Officer Gonzalez with further reason to continue to investigate.

### III.    Conclusion

For the foregoing reasons, Defendant Daniel Francisco Ramos's Motion to Suppress Evidence (Doc. # 7) is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this ___8th___ day of October, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE